UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-36-TBR

MICHAEL MCDORMAN,                                                    PLAINTIFF

v.

D&G PROPERTIES., *et al*,                                           DEFENDANTS

### MEMORANDUM OPINION AN ORDER

This matter is before the Court upon a motion by Defendants D&G Properties ("D&G"), DGW Investments, Inc. ("DGW"), Bruce Grisham ("Grisham"), Daniel Williams ("Williams"), RB Grisham, and Jacob Stauffer ("Stauffer")[1] to dismiss for improper venue, or in the alternative, to transfer venue to the Western District of Missouri. [R. 16]. Plaintiff Michael McDorman has filed his response [R. 19], and the Defendants have filed a reply. [R. 20]. Fully briefed, Defendants' motion is ripe for review, and for the following reasons, it is **DENIED**.

I.     BACKGROUND

The factual allegations as set out in the Complaint, [R. 1] and taken as true are as follows.[2] D&G and DGW (collectively referred to herein as "Companies") own and operate multiple Sonic Drive-In ("Sonic") and Taco John's franchises in Missouri, Tennessee, Kentucky, Indiana, Ohio, and West Virginia. *Id.* at 5. DGW was formed by Tom Dunivant, Bruce Grisham, and Daniel Williams. *Id.* D&G was formed by Dunivant and Grisham. *Id.*

---

[1] Hereinafter referred to collectively as "Defendants."
[2] *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) ("All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.").

In June 1996, Plaintiff met with Defendants in West Plains, Missouri and discussed his prospective employment with the Companies. *Id.* at 6. Defendants offered Plaintiff the job of controlling the franchises and he accepted the offer shortly thereafter. *Id.* As part of his employment agreement, Plaintiff would receive a 10% ownership interest in all future franchises purchased by the Companies. *Id.* Plaintiff acquired his first 10% ownership interest in a newly acquired franchise when Plaintiff and a separate company owned by Dunivant executed an operating agreement to establish Sonic of Malden, LLC ("The Malden Operating Agreement"). *Id.* at 7. Thereafter, Plaintiff and Defendants established eight additional Limited Liability Companies to control newly acquired Sonic and Taco John's franchises ("The McDorman Interest LLCs"). *Id.*

Plaintiff continued to manage the operations of the McDornam Interest LLCs, as well as the franchises wholly owned and operated by D&G and DGW, until March 2016. *Id.* at 10. In March 2016, Dunivant was bought out of his ownership interest by the other shareholders of the Companies. *Id.* Upon learning of Dunivant's departure, Plaintiff notified Defendants of his desire to voluntarily withdraw from the LLCs. *Id.* at 11. According to the terms of the McDorman Interest LLC operating agreements, this notification triggered a buy-out of Plaintiff's ownership interests. *Id.*

Defendants, however, desired to continue their business relationship with Plaintiff and set up a meeting in order to persuade Plaintiff to continue his role as Company Controller. *Id.* at 11-12. At the meeting, Plaintiff agreed to continue his role as Company Controller for three years ("The Amended Employment Agreement"). *Id.* at 12. In exchange for this commitment, Defendants agreed to purchase 50% of Plaintiff's ownership interests in the McDorman Interest LLCs immediately, and then purchase the remainder of Plaintiff's ownership interest at the

conclusion of the three-year term. *Id.* On April 12, 2016 Defendants purchased 50% of Plaintiff's ownership interests in the McDorman Interest LLCs. *Id.* at 13.

Approximately one-year into the Amended Employment Agreement, Plaintiff began to sense a lack of communication from the shareholders of the companies. *Id.* Because of this perceived lack of communication, on February 6, 2017, Plaintiff approached Defendants at the West Plains, Missouri office to express his frustration. *Id.* Defendants told Plaintiff that the shareholders had discussed the need to continue their business without Plaintiff's services. *Id.*

The next day, February 7, 2017, Plaintiff and Defendants met at Defendants' office in Paducah, Kentucky. *Id.* At this meeting, Defendants offered Plaintiff a severance agreement and Plaintiff accepted the offer. *Id.* at 14. On February 21, 2017 a meeting was held to install Plaintiff's replacement, Selina Harner, as the new Director of Operations of the companies. *Id.* at 15. Sometime after March 14, 2017, Plaintiff received a letter sent by the law firm Husch Blackwell on behalf of Defendants notifying Plaintiff that his employment with the Companies was terminated "effective immediately." *Id.*

Plaintiff alleges that the Companies have not fulfilled their obligations under the terms of the Severance Agreement, Amended Employment Agreement, and operating agreements of the McDorman Interest LLCs. *Id.* at 17-22. Plaintiff further alleges that Defendants have breached their fiduciary duties. *Id.* at 22-24. Plaintiff also claims that he was fraudulently induced to continue his employment with the companies after he expressed his desire to retire and sell his interests in the LLCs. *Id.* at 24-25.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss an action on the grounds that it was filed in an improper venue. Fed. R. Civ. P. 12(b)(3). Federal law provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Even if venue is proper, however, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Once challenged, Plaintiff bears the burden of showing that its initial choice of venue is proper." *Sechel Holdings, Inc. v. Clapp*, No. 3:12-CV-00108-H, 2012 U.S. Dist. LEXIS 108298, 2012 WL 3150087, at *2 (W.D. Ky. Aug. 2, 2012) (Heyburn, J.) (citing *Crutchfield v. Santos*, No. 5:07-CV-94-R, 2007 U.S. Dist. LEXIS 86558, 2007 WL 4124713, at *1 (W.D. Ky. Nov. 19, 2007) (Russell, J.)). "The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *NHCLC-Seattle, LLC v. Kauffman*, No. 13-12804, 2013 U.S. Dist. LEXIS 174421, 2013 WL 6474197, at *2 (E.D. Mich. Dec. 10, 2013) (quoting *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)).

### III. DISCUSSION

#### a. **Whether Venue is Proper.**

First, the Court must determine whether the Western District of Kentucky is a proper venue for this case. 28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The Sixth Circuit has interpreted this provision to mean that "the plaintiff may file his complaint in *any* forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). Accordingly, the Court need not "base[] its determination that venue [i]s improper on a single occurrence which directly gave rise to the plaintiffs' action;" rather, it must merely "consider[] whether the forum the plaintiffs chose had a substantial connection to their claim." *Id.* at 264. Courts applying this standard have explained that "venue may be proper in two or more districts, even though most of the events occurred in only one of the districts." *NHCLC-Seattle*, 2013 U.S. Dist. LEXIS 174421, 2013 WL 6474197, at *2 (E.D. Mich. Dec. 10, 2013) (quoting *Capitol Specialty Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 671-72 (S.D. Ohio 2011)); *see also IFL Grp. Inc. v. World Wide Flight Serv., Inc.*, 306 F. Supp. 2d 709, 711 (E.D. Mich. 2004) ("Just because venue is proper in that district, however, does not entail that it is not proper in another district; 'venue may be may be proper in more than one judicial district.'" (citation omitted).

In this case, a substantial part of the events giving rise to Plaintiff's claims arose in the Western District of Kentucky. In his complaint, Plaintiff raises multiple breach of contract claims. These claims arise from the alleged breach of the McDorman Interest LLC operating agreements, Plaintiff's Amended Employment Agreement, and Plaintiff's Severance Agreement. In a breach

of contract action, both the location where the contract was entered and where Plaintiff was to perform the work under the contract is relevant. *Creech v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:17-CV-00335-TBR, 2017 U.S. LEXIS 211286 at *9, 2017 WL 6567814 (W.D. Ky. Dec. 22, 2017). For over fifteen years, Plaintiff performed his duties as an employee of Defendants from his Paducah office. Also, Plaintiff executed several of the operating agreements that give rise to Plaintiff's claims in Paducah. Further, there were meetings relevant to the various agreements at issue in this case that occurred in Paducah. All of Plaintiff's claims arise out of his employment relationship with Defendants.

Because Plaintiff's performance under the agreements at issue in this case occurred predominately in Paducah, Kentucky, venue is proper in the Western District of Kentucky.

### b. **Whether Transfer is Appropriate.**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." 28 U.S.C. § 1404(a). The text of § 1404(a) requires a district court to conduct a two-step determination when ruling on a motion to transfer. First, the court must determine if the action could have originally been filed in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) ("[The] transfer power is . . . expressly limited by the final clause of § 1404(a) restricting transfer to those federal districts in which the action 'might have been brought.'"). If the case could have been pursued in the transferee district, then the transferor court must decide whether the case should be transferred in order to "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Id.* (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, 27, 80 S. Ct. 1470,

4 L. Ed. 2d 1540 (1960)). Courts should give consideration to the following factors when conducting the transfer analysis: (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties; (4) the locus of the operative facts, (5) the availability of process to compel attendance of unwilling witnesses, (6) the relative means of the parties, (7) a forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interests of justice based upon the totality of the circumstances. *See, e.g., Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Racing, Inc.*, 406 F. Supp. 2d 751 (E.D. Ky. 2005) (quoting *Viron Int'l Co. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002)); *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003).

The permissive language of § 1404(a) gives district courts broad discretion when deciding whether to transfer a case. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Courts of this district hold that the moving party bears the burden of proving that transfer is proper. *See Lorenzana v. 2nd Story Software, Inc.*, No. 4:12-CV-00021-JHM, 2012 U.S. Dist. LEXIS 95119, at *6 (W.D. Ky. July 10, 2012) (citations omitted); *Powerscreen USA, LLC v. D & L Equip., Inc.*, No. 3:07-CV-433-S, 2008 U.S. Dist. LEXIS 57248, at *3 (W.D. Ky. July 28, 2008) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

i. **Whether Plaintiff's Suit Could Have Been Brought in the Western District of Missouri.**

Plaintiff's suit could have been brought in the Western District of Missouri. Under 28 U.S.C. § 1391(b)(1) a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located." In this case, all

Defendants are residents of the Western District of Missouri. Therefore, venue is proper under § 1391 in the Western District of Missouri. Because Plaintiff could have brought this claim in the Western District of Missouri, this Court must decide whether it is in the interest of justice to transfer this case.

### ii. **Whether the Applicable Factors Weigh in Favor of Transfer.**

#### 1. **Convenience of witnesses.**

"[T]he convenience of the witnesses has been recognized as perhaps the most important factor in the transfer analysis." *W. Am. Ins. Co. v. M&M Serv. Station Equip. Specialists, Inc.*, No. 1:16-CV-00046-GNS, 2017 U.S. Dist. LEXIS 13588, 2017 WL 441542, at *2 (W.D. Ky. Feb. 1, 2017) (quoting *Boiler Specialists, LLC v. Corrosion Monitoring Servs., Inc.*, No. 1:12-CV-47, 2012 U.S. Dist. LEXIS 104321, 2012 WL 3060385, at *3 (W.D. Ky. 2012)). However, "[i]t is the convenience of the non-party witnesses ... that is the more important factor and is accorded greater weight." *Id.* (quoting *Boiler Specialists*, 2012 U.S. Dist. LEXIS 104321, 2017 WL 3060385, at *3). Party witnesses, "and those closely aligned with a party, such as employees," "are presumed to be willing to testify in either forum despite the inconvenience." 17 Georgene M. Vairo, *Moore's Federal Practice* § 111.13[1][f][iii] (Matthew Bender 3d ed. 2017).

Defendants state that most of the witnesses in this case will be the parties themselves. Because Defendants all reside in Missouri, it will be less convenient for them to litigate this case in Kentucky than it would be to litigate it in Missouri. Defendants also claim that, because Plaintiff is a resident of Tennessee, neither forum is convenient to Plaintiff. Defendants argue that this case is like *Creech* and the Court should consider the convenience of party witnesses because all of the Defendants reside in the same state. In *Creech*, all the defendants were Florida residents and the

court gave significant weight to the convenience of the party witnesses. 2017 U.S. Dist. LEXIS 211285 at *15. But this case is different because Plaintiff has identified witnesses who reside in Kentucky whereas the plaintiff in *Creech* did not identify any witnesses who were not residents of Florida. *Id.* In fact, the plaintiff in *Creech* did not identify any witnesses she would call at trial. *Id.* Because Plaintiff has identified witnesses who do not reside in Missouri, this Court will not give much weight to the convenience of party-witnesses.

Plaintiff plans to call at least five witnesses, all of whom allegedly live in Kentucky. In fact, Plaintiff claims that four of the non-party witnesses reside in Paducah. It will be much more inconvenient for these non-party witnesses if the case is transferred to the Western District of Missouri. In their reply, Defendants argue that it will be inconvenient for their accounting firm and their in-house accountants to litigate this case in Kentucky. However, witnesses that are employees of a party are presumed to be willing to testify in either forum despite the inconvenience when they are being called to testify by their employer. *Creech*, 2017 U.S. Dist. LEXIS 211285 at *5. The same logic extends to Defendants' accounting firm because the firm is closely aligned with Defendant. Because the inconvenience is greater on the non-party witnesses identified by Plaintiff, this factor weighs against transfer.

2. **The location of relevant documents and relative ease of access to sources of proof.**

Defendants argue that "the relevant documents are either stored electronically, are stored at the defendants' center of operations in West Plains, Missouri, or can be transported for a relatively low cost." [R. 17 at 7]. It does appear that nearly all the relevant documents are stored, either electronically or otherwise, in the Western District of Missouri. But "this factor is of little

importance because 'technological advancements have facilitated the electronic storage and transmission of documents from one forum to another.'" *Creech*, 2017 U.S. Dist. LEXIS 211286 at *16 (quoting *Cowden v. Parker & Assocs., Inc.*, No. CIVA 5:09-CV-0323, 2010 U.S. Dist. LEXIS 15844, 2010 WL 715850, at *4 (E.D. Ky. Feb. 22, 2010)). Although this factor weighs in favor of transfer, it is not entitled to much weight due to the ability to transmit documents electronically. *See id.* at *16-17.

### 3. The convenience of the parties.

A transfer is not warranted "if the result is simply to shift the inconvenience from one party to another." *Sullivan v. Tribley*, 602 F. Supp. 2d 795, 800 (E.D. Miss. 2009). "When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is no basis for a change of venue; the tie is awarded to the plaintiff. . . ." *In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir. 2003). Defendants argue that, because Plaintiff will be required to travel regardless of whether the case is transferred, a transfer will not impose an inconvenience on Plaintiff. Defendants also argue that, because all Defendants reside in the Western District of Missouri, a transfer will relieve them of the inconvenience they currently face of having to travel to Paducah. In other words, Defendants claim that a transfer will eliminate the inconvenience of one party without imposing an inconvenience on the other. The Court disagrees.

Transferring the case to the Western District of Missouri will impose a significant inconvenience on Plaintiff. Plaintiff lives in Tennessee. It only takes Plaintiff about one-and-a-half hours to drive to Paducah from his home. In fact, Plaintiff made this commute regularly over the course of his approximately fifteen-year employment in Paducah. On the other hand, it would take

Plaintiff about six hours to drive to Springfield, Missouri[3]. Therefore, a transfer would drastically increase Plaintiff's inconvenience.

It is less of an inconvenience for Defendants to travel to Paducah, Kentucky than it is for Plaintiff to travel to Springfield, Missouri. Defendants employ a pilot and either own or lease a private plane. In fact, Defendants frequently travel to Kentucky by private plane. Defendants are accustomed to traveling to Kentucky where they have done business for over fifteen years. For all of these reasons, this factor weighs against transfer.

4. **The locus of the operative facts.**

Paducah, Kentucky is a locus of operative facts in this case. West Plains, Missouri is also a locus of operative facts. Plaintiff worked for nearly twenty years in Paducah. Defendants attempt to devalue the importance of Plaintiff's work to this case, but Defendants have indicated that they plan on calling at least one witness to testify "about Plaintiff's poor performance and failure to carry out his duties." [R. 20 at 4]. Defendants would not be calling a witness to testify about Plaintiff's poor performance under his employment agreement if the performance was not an operative fact. The performance of Plaintiffs duties is an operative fact in this case, and for nearly twenty years this performance occurred predominately in Paducah.

There were key meetings relevant to this case that took place in both Paducah and West Plains. For example, on February 6, 2017, Plaintiff approached Stauffer in West Plains to express his concerns about a lack of communication and Stauffer told Plaintiff that the shareholders of D&G and DGW had discussed the need to continue without Plaintiff involved in the day-to-day

---

[3] The United States District Court for the Western District of Missouri, Southern Division is located in Springfield, Missouri.

operations of the companies. The next day, Stauffer, RB Grisham, and Plaintiff met in Paducah and discussed the terms of a possible severance agreement. Both of these meetings will be important to this case. There are several other meetings that will be important to this case; some occurred in Paducah while others occurred in West Plains. Because both Paducah and West Plains are loci of operative facts in this case and neither location predominates over the other, this factor is neutral. To the extent either location's connection to this case outweighs the other, the factor does not carry much weight because each location has a significant connection to the operative facts of this case.

### 5. **The availability of process to compel the attendance of unwilling witnesses.**

A federal court's subpoena power to compel the attendance of out-of-state witnesses for a trial, hearing, or deposition only extends 100 miles. Fed. R. Civ. P. 45(c)(1)(A). Regardless of whether this Court transfers the case, there will be witnesses who fall outside of the court's subpoena power. Plaintiff has identified non-party witnesses who reside near or in Paducah. These witnesses may need to be compelled to attend and if the case is transferred the court will not have the power to subpoena them.

The Defendant has identified non-party witnesses who reside outside the limits of this Court's subpoena power. Both parties argue that because these non-party witnesses are Defendants' employees, they are presumed to be willing to testify in either forum. This argument is more persuasive as applied to the Defendants' witnesses. It is unlikely that an employee would refuse a request by their employer to appear as a witness. When an employer wants an employee to appear as a witness, the employer will likely instruct its employee to testify in the action and might even bear the costs associated with traveling. But there is less reason to believe that

Defendants will incentivize their employees to participate in the trial as Plaintiff's witnesses. The testimony of Plaintiff's witnesses is presumably helpful to his case or else he would not be calling them. The Defendants may be hesitant to encourage their employees to forgo their regular work duties to testify on behalf of the Plaintiff when the testimony could be harmful to Defendants' case. The logic behind why an employee will not need to be compelled to testify evaporates when the employee is being called as a witness for the employer's adversary. For these reasons, this factor weighs against transfer.

6. **The relative means of the parties.**

Some courts have recognized, as a matter of common sense, that an individual party may have less means to litigate than a company party. *See Speedshape, Inc. v. Meechan*, No. 11-14670, 2012 U.S. Dist. LEXIS 67034, 2012 WL 1672979, at *4 (E.D. Mich. May 14, 2012) ("Defendant, as an individual, clearly has less means than Plaintiff," a company.). Defendants include corporate entities with substantial holdings and financial resources. Plaintiff is an individual with more limited means who alleges that his means were diminished by Defendants' actions. Further, Defendants employ a pilot and either own or lease a private plane. For these reasons, Plaintiff has less means to litigate this case in Missouri than Defendants have to litigate this case in Kentucky. Accordingly, this factor weighs against transfer.

7. **The forum's familiarity with the governing law.**

Federal courts hearing cases based on diversity apply the choice-of-law rules of the forum state to determine which state's law applies to the case. In Kentucky, the applicable choice-of-law rule depends upon the classification of a claim as either sounding in tort or in contract. This distinction is important because Kentucky courts utilize separate tests for cases arising in tort and

cases arising in contract. *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). Kentucky courts "are very egocentric or protective concerning choice of law questions." *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. Ct. App. 1987) (overruled on other grounds by *Oliver v. Schultz*, 885 S.W.2d 699 (Ky. 1994)). In other words, there is a strong preference in Kentucky for applying Kentucky law. This "provincial tendency" has been recognized routinely by the Sixth Circuit when applying Kentucky's choice-of-law rules. *See, e.g., Wallace Hardware,* 223 F.3d 382, 391 (6th Cir. 2000) ("On at least two occasions, we likewise have noted this provincial tendency in Kentucky choice-of-law rules."); *Adam v. J.B. Hunt Transp., Inc.,* 130 F.3d 219, 230 (6th Cir.1997) (noting that "Kentucky does take the position that when a Kentucky court has jurisdiction over the parties, '[the court's] primary responsibility is to follow its own substantive law.' " (alteration in original) (quoting *Foster v. Leggett,* 484 S.W.2d 827, 829 (Ky.1972))); *Johnson v. S.O.S. Transp., Inc.,* 926 F.2d 516, 519 n. 6 (6th Cir.1991) ("Kentucky's conflict of law rules favor the application of its own law whenever it can be justified."); *Harris Corp. v. Comair, Inc.,* 712 F.2d 1069, 1071 (6th Cir.1983) ("Kentucky courts have apparently applied Kentucky substantive law *whenever possible* .... [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary." (emphasis in original) (discussing *Breeding v. Mass. Indem. & Life Ins. Co.,* 633 S.W.2d 717 (Ky.1982))).

When deciding contract disputes, Kentucky courts apply the "most significant relationship" test. *Saleba*, 300 S.W.3d at 181. The most significant relationship test states "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties...." Restatement (Second) of Conflict of Laws § 188(1) (1971). Some of Plaintiff's claims are based upon written operating agreements that contain choice-of-law provisions and are

governed by the laws of the chosen states.[4] Two of these written operating agreements are governed by Kentucky law, two by Indiana law, two by Missouri law, and two are governed by Tennessee law. Therefore, any court that decides this case will need to apply the law of multiple states.

In tort actions, Kentucky courts apply the "any significant contacts" test. *Saleba*, 300 S.W.3d at 181; *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972) (holding that in tort cases, "significant contacts—not necessarily the most significant contacts" permit the application of Kentucky law). Because Plaintiff carried out the duties of his employment agreement for approximately fifteen years in Paducah and key meetings relevant to Plaintiff's claims took place in Paducah, there are significant contacts to permit the application of Kentucky law to Plaintiff's tort claims.

It appears that any court who hears this case will be required to apply law from multiple states. The "provincial tendency" of Kentucky courts to apply Kentucky law causes this factor to weigh slightly against transfer. But this factor does not weigh heavily on the Court's decision in this case.

8. **Plaintiff's choice of forum.**

Generally, courts give great weight to the Plaintiff's choice of forum. *See Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). On the other hand, "this factor is not dispositive," *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998),

---

[4] Plaintiff also alleges that there was a ninth unwritten operating agreement, and that the parties agreed disputes involving this unwritten operating agreement would be governed by Kentucky law.

particularly in cases in which several of the transfer factors weigh strongly in the defendant's favor. *Reese*, 574 F.3d at 320. This factor weighs against transfer.

9. **Trial efficiency and the interests of justice, based on the totality of the circumstances.**

In sum, the Court has determined that the convenience of the witnesses, convenience of the parties, availability of process to compel the attendance of unwilling witnesses, the relative means of the parties, and the Plaintiff's choice of forum all weigh against transfer. The Court also determined that the forum's familiarity with the governing law weighs slightly against transfer, but this factor does not weigh heavily on the Court's decision. The locus of operative facts was split evenly between the Western District of Missouri and the Western District of Kentucky and therefore is a neutral factor. The only factor weighing in favor of transfer is the location of documents and relative ease of access to sources of proof, but this factor is not entitled to much weight due to the ability to transmit documents electronically. Considering these factors, and based on the totality of the circumstances, the Defendants have not met their burden of proving that this case should be transferred to the Western District of Missouri for the convenience of the parties and witnesses, and in the interest of justice. Therefore, the Court exercises its broad discretion under 28 U.S.C. § 1404 and **DENIES** Defendants' motion to transfer the case to the Western District of Missouri.

IV. **ORDER**

For the foregoing reasons, the Defendant's motion to dismiss, or in the alternative, to transfer this action to the Western District of Missouri [R. 16] is **DENIED**.

A telephonic scheduling conference will be held on December 18, 2018 at 9:15 a.m., central time. The Court will place the call.

**IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**

November 20, 2018

cc: Counsel of Record.