UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-36-TBR

MICHAEL MCDORMAN,                                                          PLAINTIFF

v.

D&G PROPERTIES., *et al*,                                                  DEFENDANTS

## Memorandum Opinion & Order

This matter is before the Court upon two motions to dismiss. Defendants move the Court to dismiss Count VII of Plaintiff's Complaint for failure to state a claim upon which relief can be granted. (DN 25). Plaintiff moves the Court to dismiss in its entirety the Counterclaim Complaint filed against him by defendants, D&G Properties, Inc. and DGW Investments, Inc. (collectively, the "Companies"). (DN 30). The parties have filed their responses and replies to these motions with the Court. Fully briefed, this matter is ripe for adjudication, and for the reasons stated herein, both motions are **DENIED.**

## Background

The factual allegations as set out in the Complaint, (DN 1) and taken as true are as follows.[1] D&G and DGW (collectively referred to herein as "Companies") own and operate multiple Sonic Drive-In ("Sonic") and Taco John's franchises in Missouri, Tennessee, Kentucky, Indiana, Ohio, and West Virginia. *Id.* at 5. DGW was formed by Tom Dunivant, Bruce Grisham, and Daniel Williams. *Id.* D&G was formed by Dunivant and Grisham. *Id.*

---

[1] *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) ("All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.").

In June 1996, Plaintiff met with Defendants in West Plains, Missouri and discussed his prospective employment with the Companies. *Id.* at 6. Defendants offered Plaintiff the job of controlling the franchises and he accepted the offer shortly thereafter. *Id.* As part of his employment agreement, Plaintiff would receive a 10% ownership interest in all future franchises purchased by the Companies. *Id.* Plaintiff acquired his first 10% ownership interest in a newly acquired franchise when Plaintiff and a separate company owned by Dunivant executed an operating agreement to establish Sonic of Malden, LLC ("The Malden Operating Agreement"). *Id.* at 7. Thereafter, Plaintiff and Defendants established eight additional Limited Liability Companies to control newly acquired Sonic and Taco John's franchises ("The McDorman Interest LLCs"). *Id.*

Plaintiff continued to manage the operations of the McDornam Interest LLCs, as well as the franchises wholly owned and operated by D&G and DGW, until March 2016. *Id.* at 10. In March 2016, Dunivant was bought out of his ownership interest by the other shareholders of the Companies. *Id.* Upon learning of Dunivant's departure, Plaintiff notified Defendants of his desire to voluntarily withdraw from the LLCs. *Id.* at 11. According to the terms of the McDorman Interest LLC operating agreements, this notification triggered a buy-out of Plaintiff's ownership interests. *Id.*

Defendants, however, desired to continue their business relationship with Plaintiff and set up a meeting in order to persuade Plaintiff to continue his role as Company Controller. *Id.* at 11-12. At the meeting, Plaintiff agreed to continue his role as Company Controller for three years ("The Amended Employment Agreement"). *Id.* at 12. In exchange for this commitment, Defendants agreed to purchase 50% of Plaintiff's ownership interests in the McDorman Interest LLCs immediately, and then purchase the remainder of Plaintiff's ownership interest at the

conclusion of the three-year term. *Id.* On April 12, 2016 Defendants purchased 50% of Plaintiff's ownership interests in the McDorman Interest LLCs. *Id.* at 13.

Approximately one-year into the Amended Employment Agreement, Plaintiff began to sense a lack of communication from the shareholders of the companies. *Id.* Because of this perceived lack of communication, on February 6, 2017, Plaintiff approached Defendants at the West Plains, Missouri office to express his frustration. *Id.* Defendants told Plaintiff that the shareholders had discussed the need to continue their business without Plaintiff's services. *Id.*

The next day, February 7, 2017, Plaintiff and Defendants met at Defendants' office in Paducah, Kentucky. *Id.* At this meeting, Defendants offered Plaintiff a severance agreement (the "Severance Agreement") and Plaintiff accepted the offer. *Id.* at 14. On February 21, 2017 a meeting was held to install Plaintiff's replacement, Selina Harner, as the new Director of Operations of the companies. *Id.* at 15. Sometime after March 14, 2017, Plaintiff received a letter sent by the law firm Husch Blackwell on behalf of Defendants notifying Plaintiff that his employment with the Companies was terminated "effective immediately." *Id.*

Plaintiff alleges that the Companies have not fulfilled their obligations under the terms of the Severance Agreement, Amended Employment Agreement, and operating agreements of the McDorman Interest LLCs. *Id.* at 17-22. Plaintiff further alleges that Defendants have breached their fiduciary duties. *Id.* at 22-24. Plaintiff also claims that he was fraudulently induced to continue his employment with the companies after he expressed his desire to retire and sell his interests in the LLCs. *Id.* at 24-25.

In their answer, the Companies bring counterclaims for fraud and breach of fiduciary duty. The factual allegations as set out in the Counterclaim Complaint (DN 24) and taken as true are as

follows. Plaintiff began his employment with the Companies in 1996. *Id.* at 20. Plaintiff's job duties included the management of finances and preparation of financial information for the Companies. *Id.* The Companies placed trust and confidence in Plaintiff to manage the finances of the companies. *Id.* Part of Plaintiff's compensation came from bonuses he received based upon the net profits of the franchises operated by the Companies. *Id.* The Companies claim that Plaintiff committed fraud and breached his fiduciary duties by creating inflated profit and loss statements for the franchises and paying himself monthly bonuses based on the inflated figures. *Id.* at 20 – 22.

**Standard**

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir.2008) (citing *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167

L.Ed.2d 929 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

Additionally, the Rules require a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relies; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.' " *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 563 (6th Cir.2003) (quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993)). In other words, the "complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Frank v. Dana Corp.,* 547 F.3d 564, 570 (6th Cir.2008) (quoting *Gupta v. Terra Nitrogen Corp.,* 10 F.Supp.2d 879, 883 (N.D.Ohio 1998)). Rule 9(b)'s heightened pleading standard is "designed to prevent 'fishing expeditions,' to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters."

5

*Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466–67 (6th Cir.2011) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 503 & n. 11 (6th Cir.2007), *and United States ex rel. SNAPP, Inc. v. Ford Motor Co.,* 532 F.3d 496, 504 (6th Cir.2008)).

## Discussion

**Defendants' motion to dismiss Plaintiff's fraud claim.**

(a) <u>Plaintiff's complaint provides enough factual matter to raise a plausible inference of wrongdoing</u>.

Defendants argue that Plaintiff's complaint fails to state a claim upon which relief can be granted for three reasons: (1) it does not sufficiently identify the speaker of the alleged misrepresentations; (2) it does not explain why the statements were fraudulent; and (3) it does not sufficiently identify Plaintiff's injury resulting from the allegedly fraudulent statements. The Court disagrees. Reading the complaint in its entirety, the Court finds that Plaintiff's complaint alleges sufficient facts, taken together with the reasonable inferences arising from those facts, to state a plausible claim for relief under a theory of fraud.

"Fraudulent inducement 'attends conduct prior to striking the express or implied contract and alleges that one party tricked the other into contracting. It is based on precontractual conduct which is, under the law, a recognized tort.'" *Lillard v. Univ. of Louisville,* 2012 WL 5878715, at *4 (W.D.Ky. Nov. 21, 2012) (quoting *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 193 F.3d 415, 439 (6th Cir.1999)). Under Kentucky law, a fraud claim requires that a plaintiff establish six elements by clear and convincing evidence: (1) a material misrepresentation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted in reliance thereon, and (6) causing injury. *United Parcel Serv. Co. v. Rickert,* 996 S.W.2d 464, 468

6

(Ky.1999) (citing *Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 359 (Ky.Ct.App.1978)). In a claim for fraudulent misrepresentation, Kentucky courts have long held that:

> [F]raud cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct, upon mere failure to perform a promise—nonperformance of a contractual obligation—or upon failure to fulfill an agreement to do something at a future time or to make good subsequent conditions which have been assured. Such nonperformance alone has frequently been held not even to constitute evidence of fraud.

*Mario's Pizzeria, Inc. v. Fed. Sign & Signal Corp.,* 379 S.W.2d 736, 740 (Ky.1964) (quoting 24 Am.Jur. *Fraud and Deceit* § 267); *see also C.A.F. & Assoc., LLC v. Portage, Inc.,* 913 F.Supp.2d 333, 353 (W.D.Ky.2012); *Reece v. Blevins,* 2003 WL 1251447, at *5 (Ky.Ct.App. Feb. 7 2003). "However, a statement as to future conduct may form the basis for a misrepresentation claim if made with the intent to induce the other party to enter into a contract." *Davis v. Siemens Med. Solutions, USA, Inc.,* 399 F.Supp.2d 785, 800 (W.D.Ky.2005). In accordance with Fed.R.Civ.P. 9(b)'s heightened pleading requirements, this Court has held that "[w]hile it is not necessary to 'recite each minute detail,' a plaintiff is required to plead 'the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was obtained by the fraud.' " *Miller v. Reminger Co.,* 2012 WL 2050239, at *7 (W.D.Ky. June 6, 2012) (quoting *Scott v. Farmers State Bank,* 410 S.W.2d 717, 722 (Ky.1966)); *see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 643 (6th Cir.2003) ("In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."). In other words, a fraud claim must specify the "who, what, when, where and how" of the alleged fraud. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F. 3d 239, 256 (6th Cir. 2012).

In Count VII of his complaint, Plaintiff alleges that Defendants intentionally induced him to relinquish his contractual rights by making material misrepresentations to Plaintiff, including:

> a. Representing to McDorman that if he did not exercise his option to withdrawal from the McDorman Interest LLCs and sell his entire 10% interest, that D&G and DGW would continue to employ McDorman for three years.
>
> b. Representing to McDorman that during the course of that three years continued employment, McDorman would continue to receive (1) his full salary of $7,000 per month, (2) his monthly bonus equal to five percent (5%) of the income/loss (before bonus) on the P&L statement of all franchises owned by D&G and DGW in which McDorman did not have an interest, (3) continued monthly distributions from the McDorman Interest LLCs of which he maintained a five percent (5%) ownership interest, (4) full benefits, including health insurance, for the remainder of McDorman's term of employment and (5) that following his three-year term of continued employment, McDorman would be able [to] elect for the other members of the McDorman Interest LLCs to purchase his remaining 5% interest in the McDorman Interest LLCs at the price of three and one-half times (3.5x) the net profit from the previous year multiplied times his remaining interests.
>
> c. Representing to McDorman that in lieu of continuing the three (3) year employment agreement, they would (1) allow him to continue working for three (3) months, (2) continue making distributions for the five percent (5%) ownership interest McDorman had in the McDorman Interest LLCs, (3) continue providing health insurance coverage to McDorman until he was able to obtain Medicare, and (4) place McDorman on the Board of Directors for D&G and DGW.

(DN 1 at 24-25). When read in conjunction with the rest of the complaint, Plaintiff has stated a claim for fraud upon which relief can be granted.

Plaintiff alleges two separate instances of fraud. First, Plaintiff alleges that Defendants fraudulently induced him to relinquish his buyout rights under the Operating Agreements and to enter into the Amended Employment Agreement. (DN 38 at 5). In support of this claim, Plaintiff alleges the following facts: Grisham, Williams, RB Grisham, and Stauffer conducted a meeting sometime between March 2016 and April 2016 where they expressed their desire to keep Plaintiff employed with the Companies to "ensure the stability of the [C]ompanies' operations through the oncoming arduous period" because they "[did not have] a successor-in-waiting capable of operating the [C]ompanies." (DN 1 at 11-12). Plaintiff also alleges that, after this meeting, the

companies induced Plaintiff to enter into the Amended Employment Agreement by making promises that they never intended to keep. Finally, Plaintiff alleges that Defendants informed him that they wanted to continue the day-to-day operation of the Companies without Plaintiff's services as soon as they found a replacement. *Id.* at 13-14. The Defendants allegedly found Plaintiff's replacement and approached him with their intent to continue without his services prior to the conclusion of the Amended Employment Agreement. *Id.* These facts, read in conjunction with the entire Complaint, give rise to a plausible inference that Defendants fraudulently induced Plaintiff to enter into the Amended Employment Agreement.

Second, Plaintiff alleges that Defendants fraudulently induced him to relinquish his rights under the Amended Employment Agreement by making false promises about the terms of a possible Severance Agreement. In support of this claim, Plaintiff alleges the following facts: At a meeting held on February 7, 2017 at the Paducah Office of the Companies, Stauffer and RB Grisham made false representations to Plaintiff about the terms of the Severance Agreement in an attempt to induce Plaintiff to forgo the Amended Employment Agreement. (DN 1 at 11-15). In exchange for relinquishing his rights under the Amended Employment Agreement, Defendants promised he could continue to work for three months, maintain his insurance through the companies until he became eligible for Medicare, continue to make interest payments on Plaintiff's ownership interest in the LLCs, and award Plaintiff a seat on the Board of Directors of the Companies. *Id.* at 13-14. Plaintiff did not fulfill these promises but instead notified him, prior to the conclusion of his three-month employment term, that his employment was terminated and his ownership interest in the LLCs would be extinguished. *Id.* at 15-16. These facts, read in conjunction with the entire Complaint, give rise to a plausible inference that Defendants fraudulently induced Plaintiff to enter into the Severance Agreement.

Defendant argues that Plaintiff has failed to allege that Defendants possessed the requisite intent. The Court disagrees. Rule 9(b) of the Federal Rules of Civil Procedure provides: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The question in this case is whether the Complaint alleges facts sufficient to give rise to a plausible inference that defendants possessed the requisite state of mind for a fraud claim. The Court holds that it does.

The Sixth Circuit has held that the pleading standard "may be relaxed where information is only within the opposing party's knowledge." *Michaels Building Company, et al. v. Ameritrust Company, N.A., et al.*, 848 F.2d 674, 679-80 (6th Cir. 1988) (citing 5 C. Wright & Miller, Federal Practice & Procedure: Civil § 1298, at 416 n. 94 (1969); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974)). Furthermore, "in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control." *Id.* The Sixth Circuit has further explained that "[i]t is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery." *Id.* Therefore, "[t]he test for compliance with Rule 9(b) is whether the complaint provides the defendant with 'fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading.'" *Back v. Chesapeake Operating, LLC*, No. 7:16-192-KKC, 2018 U.S. Dist. LEXIS 20207, *9, 2018 WL 737609 (E.D. Ky. Feb. 6, 2018) (citing *Ameritrust*, 848 F.2d at 679). The Complaint contains facts, especially those discussed above, from which the Court can draw a reasonable and plausible inference that Defendants made promises they never intended to keep in order to induce Plaintiff to continue providing them with services and to avoid paying him for his ownership interest in the LLCs.

Finally, Defendants argue that "McDorman does not identify what injuries he allegedly sustained as a result of the representations." (DN 26 at 7). The Court disagrees. First, Plaintiff alleges he lost his opportunity to receive a buy-out of one-half of his ten percent ownership interest in the LLCs when Defendants fraudulently induced him to enter into the Amended Employment Agreement. Second, Plaintiff alleges he lost the opportunity to continue his employment with the companies and continue receiving all of the benefits thereof when Defendants fraudulently induced him to accept the Severance Agreement. Therefore, Plaintiff has sufficiently pled at least two injuries arising from the fraud. Ultimately, the Court finds that Plaintiff's Complaint satisfies the federal pleading standard. Defendants' motion to dismiss (DN 25) is **DENIED.**

(b) Plaintiff's fraud claim is not barred by the economic loss doctrine.

Defendants argue that Plaintiff's fraud claim is barred by the economic loss doctrine. (DN 26 at 7; DN 39 at 6). The Court disagrees. Kentucky's "'economic loss rule' prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky.2011). In *Giddings*, the Kentucky Supreme Court held:

> That the economic loss rule applies to claims arising from a defective product sold in a commercial transaction and that the relevant product is the entire item bargained for by the parties and placed in the stream of commerce by the manufacturer. Further, the economic loss rule applies regardless of whether the product fails over a period of time or destroys itself in a calamitous event, and the rule's application is not limited to negligence and strict liability claims but also encompasses negligent misrepresentation claims.

*Id.* The *Giddings* court, however, declined to determine whether the economic loss doctrine extends to fraud claims. The court explained that "that issue awaits another case because the

plaintiffs in this case pled fraud by omission, a claim that is unsustainable on the record before us, irrespective of the economic loss rule." *Id.* at 733.

Because the Kentucky Supreme Court has not answered the question, federal district courts have tried to predict whether the economic loss doctrine applies to fraud claims under Kentucky law. In *Ashland Hospital Corp. v. Provation Medical, Inc.*, the Eastern District of Kentucky "predict[ed] that the Kentucky Supreme Court would extend the economic loss rule to fraud claims." 2014 U.S. Dist. LEXIS 153610, 2014 WL 5486217, at *4 (E.D. Ky. Oct. 29, 2014). The Western District of Kentucky, on the other hand, has not ruled as definitively. In *Derby City Capital, LLC v. Trinity HR Servs.*, this Court explained that "[t]he economic loss doctrine precludes a plaintiff from recovering under a fraud theory *when that claim is intertwined with a breach of contract claim.*" 949 F. Supp. 2d 712, 727 (W.D. Ky. 2013) (emphasis added) (quoting *Westlake Vinyls, Inv. V. Goodrich Corp.*, 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007)). Our sister District Court expanded upon this principle, explaining that, "[u]nlike some fraud claims which may be inextricably intertwined with breach of contract claims, a *fraudulent inducement claim* centers around conduct occurring prior to the formation of the contract," and "[t]o expand the rule so as to bar a fraudulent inducement claim . . . without further guidance from the Kentucky courts would eviscerate the claim of fraudulent inducement and would contravene contrary Kentucky case law." *Morris v. Tyson Chicken, Inc.*, No. 4:15-CV-00077-JHM, 2015 U.S. Dist. LEXIS 153558, 2015 WL 7188479, at *5 (W.D. Ky. Nov. 13, 2015) (McKinley, J.) (emphasis added) (quoting *Davis v. Siemens Med. Sols. USA, Inc.*, 399 F. Supp. 2d 785, 801 (W. D. Ky. 2005), *aff'd* 279 F. App'x 378 (6th Cir. 2008) (Heyburn, J)).

In *Morris*, the plaintiffs alleged that the defendant, Tyson Chicken, fraudulently induced plaintiffs to enter into contracts to grow Tyson's chickens. 2015 U.S. Dist. LEXIS 153558. The

12

*Morris* court decided not to apply the economic loss doctrine, reasoning that it "disagree[d] with the Defendant's assertion that the crux of the Plaintiff's fraud claim is the defective nature of the products provided under the contract. Instead, the Court finds that the crux of the Plaintiff's fraud claim is that they were fraudulently induced into entering into the contract in the first place." *Id.*

In this case, like in *Morris*, the crux of Plaintiff's fraud claim is that he was fraudulently induced into entering into the contract. Defendant's argument that Plaintiff's allegations for breach of contract and fraud claims are the same is misguided. The crux of Plaintiff's fraud claim is not that he was damaged when the Defendants failed to fulfill their obligations under the Amended Employment Agreement. Instead, Plaintiff's fraud claim alleges that he was injured when the Defendants induced him to enter into the Amended Employment Agreement in the first place. This distinction is best understood by recognizing the distinct injuries arising from each claim. Plaintiff's alleged injury from the breach of contract claim arises from the loss of the benefit of the bargain he was entitled to under the Amended Employment Agreement. Plaintiff's alleged injury from the fraud claim, *inter alia*, is the relinquishment of his rights under the Operating Agreements. More specifically, Plaintiff alleges that the Defendants fraudulently induced him to forgo his right to seek a buy-out of his ownership interest in the Companies. (DN 1 at 12-13). Under the terms of the Operating Agreements, Plaintiff had the right to voluntarily withdraw from the LLCs. *Id.* at 11. This withdrawal would trigger a buy-out of Plaintiff's ownership interest in the LLCs. *Id.* The Operating Agreements mandated that Plaintiff's interest be purchased for three and one-half times the previous year's net profits multiplied by Plaintiff's interest percentage. *Id.* At the time of the alleged fraud, Plaintiff sought to sell his entire ten percent interest in the LLCs. Plaintiff claims that Defendants induced him to continue his services under a new employment agreement whereby one-half of his ownership interest would be purchased immediately and the

remaining ownership interest would be purchased at the conclusion of the three-year employment term. *Id.* at 12-13. Defendant Grisham did, in fact, purchase one-half of Plaintiff's ownership interest for $169,841.83 after Plaintiff entered into the Amended Employment Agreement. *Id.* at 13. Plaintiff's fraud claim alleges that Defendants caused him to forgo the remaining purchase price of his ownership interest that was due to him under the Operating Agreements at the time he attempted to voluntarily withdraw from his employment with the Companies. In other words, but-for the fraudulent actions of Defendants, Plaintiff would have been paid approximately $339,683.66[2] in exchange for his entire ownership interest in March or April 2016. This injury provides an example of the separate injuries that Plaintiff may have suffered from the claim. In addition to this injury, Plaintiff alleges that Defendants fraudulently induced him to accept the Severance Agreement, thereby foregoing his rights under the Amended Employment Agreement. By accepting the Severance Agreement, Plaintiff relinquished the rights he enjoyed under the Amended Employment Agreement. The relinquishment of these rights is a separate injury from the loss of the benefit that Plaintiff bargained for in the Severance Agreement.

Furthermore, as Plaintiff identifies, "courts applying Kentucky law unequivocally have refused to apply the [economic loss] rule to tort claims stemming from contracts for services." *Corizon Health, Inc. v. CorrecTek, Inc.*, 2018 U.S. Dist. LEXIS 97083, at *32 (W.D. Ky. June 8, 2018). In this case, the Amended Employment Contract is a contract for services. Therefore, the economic loss doctrine does not apply to Plaintiff's fraud claim.

---

[2] This figure is a rough estimate the Court arrived at by doubling the $169,841.83 Plaintiff claims he received on April 12, 2016 in exchange for one-half of his ownership interest. This figure does not represent an amount of actual damages that may be owed to Plaintiff. Instead, $339,683.66 is merely an abstract figure used by the Court to explain the injury Plaintiff claims to have suffered.

**Plaintiff's motion to dismiss Defendants' Counterclaim.**

In their counterclaim, the Companies allege that Plaintiff breached his fiduciary duty by creating falsely inflated profit and loss statements for the calculation of his bonus payments and made payment to himself based upon the falsified calculations. (DN 24 at 21). The Companies also claim that Plaintiff committed fraud based upon these same factual allegations. Plaintiff has filed a motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted. (DN 30).

To state a claim for breach of fiduciary duty, the Companies must allege: (1) the existence of a fiduciary duty; (2) a breach of that duty; (3) and that the breach caused injury to the party to whom the duty was owed. *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189 (Ky. 2013). To state a claim for fraud, the Companies' counterclaim complaint must at least "(1) specify the statements that the [Companies] contend[] are fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Derby City*, 949 F.Supp.2d at 719.

In this case, the counterclaim states sufficient factual allegations to survive Plaintiff's motion to dismiss on both the fraud and breach of fiduciary duty counts. The Companies explain in their response to Plaintiff's motion:

> [T]he fraud claim is based upon allegations that McDorman created falsely inflated profit and loss statements, which he used to improperly pay himself more money than that to which he was entitled. The allegations identify (1) the fraudulent statements: all the profit and loss statements created by McDorman during his employment with the Companies; (2) the speaker: McDorman; (3) when and where the statements were made: in each profit and loss statement created by McDorman; and (4) why the statements were fraudulent: because McDorman used falsely inflated numbers to calculate the bonus he paid to himself. Likewise, the allegations

identify the fraudulent scheme and intent – McDorman's creation of false financial records in order to receive money to which he was not entitled – and the resulting injury to the Companies of the loss of money that McDorman improperly paid to himself.

(DN 33 at 6). Furthermore, the Companies allege (1) that Plaintiff's job duties included the management of finances and preparation of financial information, including but not limited to profit and loss statements, for the Companies; (2) that the Companies placed trust and confidence in Plaintiff to manage the finances of the Companies; (3) that McDorman had the opportunity to receive a bonus calculated based upon the net profits for franchises operated by the companies; and (4) that the Companies were damaged by Plaintiff's overpayments over the course of his employment. (DN 24 at 20 – 22). The Court is persuaded that these facts, along with the reasonable inferences arising from them, state a plausible claim for relief upon theories of fraud and breach of fiduciary duty. Plaintiff's motion to dismiss the Companies' counterclaim complaint is therefore **DENIED.**

## ORDER

**IT IS HEREBY ORDERED,** for the foregoing reasons, Defendants' motion to dismiss (DN 25) is **DENIED** <u>and</u> Plaintiff's motion to dismiss (DN 30) is also **DENIED**. **IT IS SO ORDERED.**

*[Signature: Thomas B. Russell]*

**Thomas B. Russell, Senior Judge**
**United States District Court**

July 24, 2019

CC:    Counsel of Record